IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:15-CV-28-FL

| | |
|---|---|
| DEBRA J. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| STATE FARM LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for judgment on the pleadings, with respect to plaintiff's second and third claims for relief. (DE 38). The issues raised have been briefed fully and are ripe for ruling. For the reasons that follow, defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff is the alleged owner and beneficiary of a life insurance policy (the "policy"), on the insured, Brad Davis ("Brad").[1] The policy originally named a third party, Payton Davis ("Payton"), as "Irrevocable Benef. [sic]" upon its inception in 1999, (Policy, DE 33-1, 17), but in 2011 and 2012, Brad named plaintiff as beneficiary and owner of the policy. (See id., 14–15). As of the date plaintiff filed the complaint, Brad was alive and no life insurance payment was due under the terms of the policy.

---

[1] Although not apparent from the complaint, and not relevant to the court's disposition of the instant motion, the parties' briefing suggests that plaintiff and Brad were married, and that their marriage ended in divorce sometime after 2012.

Plaintiff brought suit against defendant, Brad's insurer, on January 6, 2015, after defendant refused to honor Brad's transfer of the policy to plaintiff and Brad's designation of plaintiff as beneficiary. Instead, defendant returned ownership to Brad and installed Payton or her trustee as beneficiary. In doing so, defendant claimed plaintiff could not be the policy beneficiary because the transfer had occurred without consent of the irrevocable beneficiary, Payton. Further, defendant claimed plaintiff could not be the policy owner, as Brad could not have transferred ownership of the policy to plaintiff without Payton's consent, also on account of Payton's status as irrevocable beneficiary.

Plaintiff filed complaint in the New Hanover County, North Carolina, Superior Court. Plaintiff alleged a claim for violation of the North Carolina Unfair and Deceptive Practices Act ("UDPA"), N.C. Gen. Stat. § 75–1.1, et seq., grounded in, among other things, defendant's unilateral removal of plaintiff from her positions as owner and beneficiary; defendant's failure to explain to plaintiff fully its actions affecting that removal; and defendant's offer to plaintiff of an unreasonably low amount in exchange for settlement of her potential legal claims. In addition, plaintiff sought a declaratory judgment as to ownership of the policy, N.C. Gen. Stat. §§ 1–253 & 254. On February 11, 2015, defendant removed the case to this court, pursuant to 28 U.S.C. §§ 1441 & 1446, invoking the court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332.

On April 2, 2015, plaintiff filed a first amended complaint, which added a claim for breach of contract (with the breach of contract claim as claim two and the UDPA claim as claim three). That claim was asserted in plaintiff's capacity as both owner and beneficiary, and was grounded in defendant's removal of plaintiff from the policy in both capacities. On August 22, 2015, with leave of court and over defendant's objection, plaintiff filed a second amended complaint, which then

became and now remains the operative pleading in this matter. The second amended complaint did not add any new claim for relief, but, instead clarified certain relevant facts.

On September 4, 2015, defendant answered plaintiff's complaint. In addition, on October 20, 2015, defendant filed the instant motion for judgment on the pleadings, which mounts an attack on plaintiff's breach of contract and UDPA claims only. In support of its motion, defendant argues that plaintiff's breach of contract claim must be dismissed because defendant has not "anticipatorily breached" the policy as a matter of law, plaintiff has failed to allege properly a breach of the policy, and because plaintiff lacks Article III standing to sue for breach of the policy, where Brad is alive and, thus, no life insurance payments are due at this time. On plaintiff's UDPA claim, defendant argues that it has not engaged in either "unfair" or 'deceptive" conduct, and that, in any case, plaintiff's UDPA claim fails as a matter of law where defendant's alleged acts arise in the context of a contract and are not accompanied by "substantially aggravating circumstances."

## STATEMENT OF FACTS

On March 28, 1999, defendant issued the policy on Brad's life. The policy is a $100,000.00 whole-life insurance policy. It is scheduled to terminate in 2069, the year Brad will turn 95, and purports to be a contract between its "owner," originally Brad, and defendant.

The present dispute concerns the effect of Brad's beneficiary and owner selections. Brad selected the policy beneficiary, in the first instance, as part of his policy application. (Policy, 17). Specifically, the policy application, dated March 18, 1999, includes a provision entitled "Beneficiary Designation," which established the policy beneficiaries at the time the policy issued. (See id., 17–18). The "Beneficiary Designation" provision appears as follows:

3

[Image of Section 10 Beneficiary Designation form with handwritten entries naming Jennifer Lynn Ward, Nancy Davis as successor beneficiaries, Payton Lyndsay Davis as primary beneficiary with Nancy Davis as trustee, and Estate as final beneficiary.]

(Id.). On its face, the first area names Nancy Davis ("Nancy"), Brad's mother, as the "successor" beneficiary. In the second area, Payton is named as "primary" beneficiary, with Nancy named as her "trustee." The second area further provides that Payton is to be the "Irrevocable Benef. [sic]." Finally, the third area names Brad's estate as the "final" beneficiary. Thus, the policy purports to name Payton, Brad's daughter, as the irrevocable beneficiary, while naming Nancy as Payton's trustee and the successor beneficiary. (Id.).

With respect to changes in ownership, the policy provides:

> The Owner is as named in the application, unless changed. You may exercise any policy provision only by request and while the Insured is alive. . . . You many change the ownership of this policy by sending us a request while the Insured is alive. We have the right to request this policy to make the change on it. The change will take effect the date you sign the request, but the change will not affect any action we have taken before we receive the request. A change of owner does not change the beneficiary designation.

4

(Id., 8) (the "ownership clause"). "You" is defined as "the Owner." (Id.). Further, with respect to changes in beneficiary designation, the policy states:

> [The beneficiary designation] is as shown in the application, unless you have made a change. It includes the name of the beneficiary and the order and method of payment. If you name "estate" as a beneficiary, it means the executors or administrators of the last survivor of you and all beneficiaries. If you name "children" of a person as a beneficiary, only children born to or legally adopted by that person will be included.

(Id., 9) (the "beneficiary clause").

On May 9, 2011, Brad submitted to defendant a "Change of Beneficiary" form, which named plaintiff as the policy's "primary" beneficiary and named "Grayson Davis," as the "successor" beneficiary. (Id., 15). The Change of Beneficiary form was not signed by either Payton or Nancy, as her trustee. (Id.). On November 30, 2012, Brad submitted a separate policy change form that purported to transfer ownership of the policy to plaintiff. (Id., 14). This form also was not signed by either Payton or Nancy, as Payton's trustee. Thereafter, plaintiff maintained the policy by paying all premiums owed to defendant and otherwise operating as the sole owner of the policy.

On May 12, 2014, Nancy contacted defendant and asserted that Brad's signature had been forged on both the 2011 Change of Beneficiary form and 2012 policy change form. In addition, Nancy informed defendant that Payton was required to be named as the policy's "primary beneficiary" as part of a divorce decree between Brad and plaintiff. Defendant subsequently conducted an internal investigation into Nancy's claims and, despite concluding that the divorce decree did not address the policy specifically, began researching the validity of the purported changes to the policy made in 2011 and 2012, in light of the fact that Payton's designation as "primary beneficiary" might be "irrevocable." (DE 33-2, 1–3). By November 4, 2012, defendant had referred questions regarding the legal effect of the 2011 and 2012 amendments to the policy to

5

its in-house counsel, after concluding that the ownership changes "should not have been completed" without either Payton's signature or the signature of her trustee, Nancy. (Id., 2).

Meanwhile, defendant relayed this information to plaintiff through her State Farm agent, Rob Cutting ("Cutting"). Early in November 2014, Cutting contacted plaintiff over the phone and informed her of defendant's intention to remove her as both policy owner and beneficiary. Plaintiff met with Cutting on November 4, 2014, and he confirmed defendant's intention. As authorized by defendant, Cutting offered to return to plaintiff her most recent premium payment, dated October 13, 2014, in the amount of $179.00. That premium payment represents approximately 10% of the $1,776.00 plaintiff had paid between the time she assumed ownership of the policy and November 2014.

After the meeting with Cutting, plaintiff called defendant, hoping to receive an explanation for defendant's actions, but her efforts were unsuccessful. No one answered plaintiff's call and she was forced to leave a voice mail; defendant never returned plaintiff's call. Later, on November 14, 2014, plaintiff sent a demand letter to defendant, insisting upon an explanation for defendant's actions and requesting a copy of the policy, as well as other related documents. (DE 33-5). In response, defendant provided a copy of the policy and payment history, but provided no further documentation. In addition, defendant offered no explanation for its unilateral actions.

## COURT'S DISCUSSION

A.   Standard of Review

In reviewing a motion for judgment on the pleadings, under Rule 12(c), the court applies "the same standard" as for motions to dismiss made pursuant to Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A motion to dismiss under Rule 12(b)(6) tests the

6

legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

B.  Analysis

    1.  Breach of Contract

Plaintiff, in her capacity as policy owner, alleges that defendant breached both the ownership clause and beneficiary clause, where defendant was not authorized under the policy's terms to affect changes under either clause without her consent. In addition, plaintiff, in her capacity as beneficiary, alleges that defendant anticipatorily repudiated the policy, by removing her as

7

beneficiary and replacing her with Payton. The court considers each ground for plaintiff's breach of contract claim, and rejects each, in turn.

        a.     Beneficiary Claim

The parties agree that Tennessee law governs plaintiff's breach of contract claim, where the policy was entered into and delivered in Tennessee. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941) (federal courts apply forum state's choice of law); Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000) (employing lex contractus; applying the law of the place where the contract was formed in insurance dispute). Under Tennessee law, a breach of contract claim has three elements: 1) the existence of an enforceable contract, 2) nonperformance amounting to a breach of that contract, and 3) damages caused by the breach of contract. Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., 79 F.3d 496, 514 (6th Cir. 1996); ARC LifeMed Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Defendant contends plaintiff's breach of contract claim, asserted in her capacity as beneficiary, must be dismissed for lack of damages. Plaintiff argues in response that she has suffered damages, where defendant has demonstrated its intent to remove her as beneficiary and to deny her the proceeds of the policy upon Brad's death.

Assuming, without deciding, plaintiff's pleaded status as both policy owner and beneficiary vests in her a legal entitlement to, rather than a mere expectancy in, the policy's proceeds payable upon Brad's death, her beneficiary-based breach of contract claim nevertheless fails for lack of damages. See Metro. Gov't v. Cigna Healthcare of Tenn., Inc., 195 S.W.3d 28, 35 (Tenn. Ct. App. 2005) ("The mere fact a party breaches a contract does not entitle the other party to an award of damages."). If, on the one hand, plaintiff properly was designed the policy beneficiary in 2011,

8

defendant's unilateral change to the beneficiary designation is of no legal effect, and, thus, plaintiff continues to be the policy beneficiary. If, on the other hand, plaintiff was not properly made the policy beneficiary in 2011, she is not entitled to the policy proceeds in the first place, and cannot claim as damages the deprivation of funds to which she is not legally entitled.

    b.  Ownership Claim

Defendant also contends that plaintiff's claim, asserted in her capacity as policy owner, must be dismissed where plaintiff has not suffered any damages. Plaintiff, in contrast, contends that she has been damaged, where defendant's actions undermined her contractually-based expectation that she be able to designate both the policy owner and beneficiary.

Plaintiff alleges that defendant improperly removed her as policy owner, and usurped her exclusive, contractually-granted power to designate the policy owner and beneficiary. However, assuming Brad's 2012 transfer of policy ownership to plaintiff was valid, as plaintiff claims, plaintiff could not have been damaged by defendant's actions. In that case, defendant's act of reverting policy ownership to Brad, and reverting the beneficiary designation to Payton, was of no legal effect and plaintiff has been the policy owner, with all the powers that designation entails, since 2012. In other words, plaintiff has not been denied anything guaranteed to her under the policy. This is especially true where, as here, plaintiff has never attempted to assert her rights as owner by, for example, attempting to change the beneficiary or surrender the policy for cash.

If, in the alternative, Brad's 2012 transfer of policy ownership was of no effect, for example, if Payton was the irrevocable beneficiary and her consent to the change in ownership was required but not received, plaintiff has no damages <u>accruing from</u> a breach of contract. In that case, plaintiff was never a proper party to the contract.

9

In sum, plaintiff's breach of contract claim must be dismissed. Although plaintiff asserts her claim in both her capacity as owner and beneficiary, she has not pleaded, and cannot at this time plead damages in either capacity. Nevertheless, the court's holding as to plaintiff's breach of contract claim in her capacity as beneficiary does not extend to any potential future claim brought upon Brad's death and defendant's subsequent denial of policy benefits, in the event plaintiff is determined to have been properly designated beneficiary. In addition, should the court reject plaintiff's claim to ownership in the resolution of her pending declaratory judgment claim, the court's holding does not foreclose an unjust enrichment claim to recoup the amount plaintiff spent on policy premiums, where she has paid those premiums since 2012. However, the court does not express any opinion on the merits of plaintiff's declaratory judgment claim at this time.

2. UDPA

The UDPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75–1.1(a). To state a claim under the UDPA, the plaintiff must prove 1) that the defendant committed an unfair or deceptive act or practice, 2) in or affecting commerce, and 3) the defendant's act proximately caused the plaintiff injury. Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88 (2013). "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996).

Plaintiff's UDPA claim is grounded in a wide array of conduct, some of which is prohibited under N.C. Gen. Stat. § 58–63–15(11), and some of which is not. Specifically, plaintiff alleges that defendant:

10

1) failed to promptly provide any explanation of the basis in the policy or otherwise for defendant's removal of plaintiff as policy owner and beneficiary;

2) failed to conduct a reasonable investigation before removing plaintiff as the policy owner and beneficiary so as to determine the factual and legal basis for that removal;

3) removed plaintiff as policy owner without a sufficient factual and legal basis to do so;

4) removed plaintiff as policy beneficiary without a sufficient factual or legal basis to do so;

5) made an extremely unreasonable offer to plaintiff to return $179.00 of previously paid policy premiums in exchange for plaintiff relinquishing her status as owner and beneficiary; and

6) forced plaintiff to retain counsel due to defendant's threats to promptly remove plaintiff as policy owner and beneficiary.

(Second Am. Compl., DE 33, ¶61).

Section 58–63–15(11), which addresses unfair claim settlement practices, provides 14 categories of conduct typical of the type prohibited by the UDPA. The statute, generally, does not enumerate per se violations of the UDPA, but, rather, contains "examples of conduct to support a finding of unfair or deceptive acts or practices." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 71 (2000). That general rule has one exception. "'[N]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' N.C. Gen. Stat. § 58–63–15(11)(f) . . . is inherently unfair, unscrupulous, immoral, and injurious to consumers," and thus is a per se violation of the UDPA. Id.

With regard to grounds 1 through 4, plaintiff's UDPA claim fails because those facts relate to defendant's attempt, or, more appropriately, alleged failure, to carry out its contractual obligations under the policy. "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDPA]." Broussard v. Meineke Disc. Muffler Shops, Inc.,

11

155 F.3d 331, 347 (4th Cir. 1998). In the rare case where a breach of contract also supports a UDPA claim, the breach must be accompanied by "[e]gregious or aggravating circumstances." Ellis v. La.–Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012). Such circumstances typically involve forged documents, lies, and fraudulent inducements. See Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 667 (M.D.N.C. 2013). Plaintiff has alleged no aggravating or egregious circumstances. Rather, plaintiff has alleged only that defendant was contractually required to treat her as the owner and beneficiary, defendant treated her in that manner for a time, and suddenly stopped without appropriate explanation. At best, plaintiff has alleged an intentional breach of contract, which, standing alone, is not an unfair or deceptive act or practice.

Similarly, plaintiff's UDPA claim fails on the fifth asserted basis. Although not explicit, plaintiff suggests that defendant's "extremely unreasonable" offer to settle her potential legal claim amounts to a per se violation of § 75–1.1, where it also is a violation of § 58–63–15(11)(f). See Gray, 352 N.C. at 71. It does not. Read in context § 58–63–15(11)(f) prohibits only the unfair settlement of insurance claims. See Jefferson-Pilot Life Ins. Co. v. Spencer, 336 N.C. 49, 53–54 (1994) (reading similar provision in context of statutes regulating insurance). It does not reach settlement of legal claims. Stripped of its improvidently-applied "per se" gloss, plaintiff's UDPA claim rests on nothing more than an unreasonably low settlement offer as to her potential legal claims against defendant. Such an offer hardly can be considered "unfair" within the meaning of § 75–1.1, in the sense that it is not "substantially injurious to consumers." Marshall v. Miller, 302 N.C. 539, 548 (1981) (emphasis added). In any case, it is doubtful that an offer to settle a legal claim is "in commerce," as is required by § 75–1.1, where the parties are neither in the relation of consumer-supplier or competitors, but, rather, are potential adversaries in a court proceeding. See

12

Exclaim Mktg., LLC v. DirecTV, LLC, __ F. Supp. 3d __, 2015 WL 5773586, at *5 (E.D.N.C. 2015); see also HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 592 (1991) (purpose of § 75–1.1 is "to benefit consumers").

Finally, inasmuch as plaintiff's UDPA claim rests on the sixth ground, forcing plaintiff to retain counsel, that claim is wholly without merit. First, as explained above, the actions that "forced" plaintiff to retain counsel arouse out of defendant's alleged breach of the policy, an insurance contract. Therefore, where plaintiff has failed to plead substantially aggravating circumstances attending that breach of contract, plaintiff's UDPA claim rested upon ground six properly is dismissed. In addition, plaintiff has suffered no "damages" arising from ground six. Any damages plaintiff has suffered related to her choice to retain counsel necessarily were incurred as attorney fees. The UDPA already provides a provision allowing the recovery of attorney fees, N.C. Gen. Stat. § 75–16.1. That statute allows a prevailing plaintiff to recover attorney fees only where the defendant "has willfully engaged in the act or practice" or "there was an unwarranted refusal . . . to fully resolve the matter." § 75–16.1(1). Because the statute already provides a mechanism whereby a prevailing plaintiff can recover attorney fees, plaintiff cannot recover attorney fees as her principal damages.

In sum, none of the grounds set forth in the complaint support a UDPA claim and, thus, plaintiff's UDPA claim must be dismissed.

## CONCLUSION

Based on the foregoing, defendant's motion for judgment on the pleadings with respect to plaintiff's second and third claims (DE 38) is GRANTED.

SO ORDERED, this the 18th day of February, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge